**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ROCHELLE BROWN, | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. |
| vs. | § | |
| | § | **COMPLAINT** |
| WESTERN FUNDING, INC. AND | § | Jury Trial Demanded |
| AUTOMOBILE RECOVERY BUREAU, | § | |
| INC., | § | |
| Defendants. | § | |

**NATURE OF ACTION**

1.      Plaintiff Rochelle Brown ("Ms. Brown") brings this action against Defendants Western Funding, Inc. ("Western Funding") and Automobile Recovery Bureau, Inc. ("ARB") (collectively, "Defendants") pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., Article 9 of the Texas Uniform Commercial Code, TEX. BUS. & COM. CODE § 9.101 *et seq*., and the Texas Debt Collection Act ("TDCA"), TEX. FIN. CODE § 392.001 *et seq*.

**JURISDICTION, VENUE, AND STANDING**

2.      This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

3.      Ms. Brown has Article III standing to bring this action, as she seeks to redress conduct by Defendants that caused Ms. Brown to suffer intangible harms, which Congress has made legally cognizable in passing the FDCPA. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016) (Congress is "well positioned to identify intangible harms that meet minimum Article III requirements," and thus "may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously

1

inadequate in law.'" (quoting *Lujan v. Defs of Wildlife*, 504 U.S. 555, 578 (1992)); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 WL 3671467, at *3 (N.D. Ill. July 11, 2016) ("Without the protections of the FDCPA, Congress determined, the '[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers.'" (quoting 15 U.S.C. § 1692(b)).

4.      Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts and transactions giving rise to Ms. Brown's action occurred in this district, where Ms. Brown resides in this district, and where Defendants transact business in this district.

## THE FAIR DEBT COLLECTION PRACTICES ACT

5.      Congress enacted the FDCPA to "eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) (citing 15 U.S.C. § 1692(e)).

6.      "[T]he FDCPA is a strict liability statute—collector 'need not be deliberate, reckless, or even negligent to trigger liability . . . .'" *Walker v. Pharia, LLC*, No. 4:09-CV-369-Y, 2010 WL 565654, at *3 (N.D. Tex. Feb. 18, 2010) (quoting *Ross v. RJM Acquisitions Runding LLC*, 480 F.3d 493, 495 (7th Cir. 2007)).

7.      "To determine whether a particular collection practice violates the FDPCA, the Court 'must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard.'"  *Castro v. Collecto, Inc.*, 668 F. Supp. 2d 950, 959 (W.D. Tex. 2009) (citing *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009)).

8.      "The Fifth Circuit has explained the unsophisticated or least sophisticated consumer standard is meant to protect all consumers from abusive or deceptive collection

2

practices and to protect debt collectors from consumers who misinterpret collection materials." *Id.* at 959-60.

## THE UNIFORM COMMERICAL CODE

9.      "Article 9 of the UCC is a comprehensive statutory scheme governing the rights and relationships between secured parties, debtors, and third parties." *McCullough v. Goodrich & Pennington Mortg. Fund, Inc.*, 373 S.C. 43, 53, 644 S.E.2d 43, 49 (2007).

10.      Article 9 serves "to provide a simple and unified structure within which the immense variety of present-day secured financing transactions can go forward with less cost and with greater certainty." *Haas' Estate v. Metro–Goldwyn–Mayer, Inc.*, 617 F.2d 1136, 1140 (5th Cir. 1980).

11.      After a default, the UCC gives secured parties the right to repossess collateral. *See* TEX. BUS. & COM. CODE § 9.609.

12.      There is one restriction, however, which the law imposes upon this right. It must be exercised without provoking a breach of the peace; and, if a secured party finds that it cannot obtain possession without committing a breach of the peace, it must stay its hand, and resort to the law. *MBank El Paso, N.A. v. Sanchez*, 836 S.W.2d 151, 152 (Tex. 1992).

13.      This is so because the preservation of peace, "is of more importance to society than the right of the owner of a chattel to get possession of it." *Willis v. Whittle,* 82 S.C. 500, 64 S.E. 410 (1909); *see also Singer Sewing Mach. Co. v. Phipps,* 49 Ind.App. 116, 94 N.E. 793 (1911) (quoting 3 William Blackstone, Commentaries *4) ("[T]his natural right of recaption shall never be exerted, where such exertion must occasion strife . . . or endanger the peace of society.").

## THE TEXAS DEBT COLLECTION ACT

14.     In 1973, the Texas State Legislature enacted the TDCA to "control and curtail the practices used in the collection of debt" which the legislature viewed unethical and harassing to consumers.  *See* House Comm. on Judiciary, Bill Analysis, Tex. S.B. 252, 63rd Leg., R.S. (1973).

15.     Like the FDCPA, the TDCA is a strict liability lawsuit which does not require proof of actual damages in order to recover statutory damages under the Act.  *See Marauder Corp. v. Beall*, 301 S.W.3d 817, 822 (Tex. App. 2009).

## PARTIES

16.     Ms. Brown is a natural person who at all relevant times resided in the State of Texas, County of Harris, and City of Houston.

17.     Ms. Brown is allegedly obligated to pay a debt.

18.     Ms. Brown is a "consumer" as defined by 15 U.S.C. § 1692a(3).

19.     Ms. Brown is a "consumer" as defined by TEX. FIN. CODE § 392.001(1).

20.     Western Funding is a company that regularly purchases consumer paper in the form of automobile loans.

21.     Western Funding is a "secured party" as defined by TEX. BUS. & COM. CODE § 9.102(a)(73).

22.     Western Funding is an entity which at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "consumer debt" as defined by TEX. FIN. CODE § 392.001(2).

23.     Western Funding is a "debt collector" as defined by TEX. FIN. CODE § 392.001(6).

24.      ARB are persons or entities that at all relevant times were acting as repossession agents working at the behest of Western Funding.

25.      At all relevant times, ARB was an entity using instrumentalities of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

26.      ARB is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

### FACTUAL ALLEGATIONS

27.      On or about March 10, 2016 Ms. Brown purchased a 2011 Mercedes Benz ML (the "Vehicle") from non-party, Auto Access.

28.      Ms. Brown purchased the Vehicle for her own personal family and household use.

29.      The Vehicle constitutes "consumer goods" as defined by TEX. BUS. & COM. CODE § 9.102(a)(23).

30.      Ms. Brown could not afford to purchase the vehicle outright, so she purchased the Vehicle on credit.

31.      In connection with the transaction, Ms. Brown executed a loan agreement in Auto Access's favor.

32.      Thereafter, the loan agreement was assigned to Western Funding.

33.      As part of the agreement, Auto Access and its assignee, Western Funding, obtained a security interest in the Vehicle.

34.      The Vehicle constitutes "collateral" as defined by TEX. BUS. & COM. CODE § 9.102(a)(12).

35.      Thereafter, Ms. Brown made her payments under the contract to Western Funding.

36.     Sometime later, Ms. Brown experienced a financial hardship which in turn caused her to fall behind in her payments.

37.     Thereafter, Western Funding engaged its repossession agents, ARB, to repossess Ms. Brown's vehicle.

38.     On Wednesday, July 19, 2017, at around midnight, ARB went to Ms. Brown's residence to repossess the Vehicle.

39.     Ms. Brown lives in a high-rise apartment building, Hanover Post Oak.

40.     Ms. Brown keeps her vehicle secured in a locked private parking structure on Hanover Post Oak property.

41.     When ARB's personnel arrived at Ms. Brown's residence, they tried to gain access her building, and were met by Hanover Post Oak's concierges, Mohammed and Marty (the "Concierges").

42.      Hanover Post Oak's Concierges notified ARB's personnel that Hanover Post Oak was private property and that they were not allowed on the premises.

43.     The Concierges demanded that ARB's personnel leave immediately and advised that if they returned, the police would be called.

44.     Thereafter, at around 11:59 P.M. on Monday July 24, 2017, ARB's personnel returned to Hanover Post Oak and attempted to force their way into Hanover Post Oak's gated parking garage.

45.     When ARB's personnel attempted to sneak into the locked garage by tailgating another vehicle that was authorized to enter the parking garage, Hanover Post Oak's Concierges observed the attempt on a surveillance camera and immediately moved to confront ARB's personnel.

6

46.     Again, Hanover Post Oak's Concierges advised ARB that they could not enter and that they must leave.

47.     About an hour later, at approximately 1:00 A.M. on July 25, 2017, ARB's personnel returned to Hanover Post Oak and again attempted to break into Hanover Post Oak's private gated parking structure.

48.     This time however, ARB's personnel brought a massive metal object (possibly a magnet) with them, which they slid under the gate blocking the garage's exit.

49.     This had the effect of tricking the garage's access control system into thinking a vehicle was trying to exit the garage.

50.     The garage's exit door opened, and Defendant entered through the exit door and repossessed the Vehicle.

51.     These actions were caught on Hanover Post Oak's surveillance cameras.

## COUNT I
## VIOLATION OF 15 U.S.C. § 1692f(6)(A)
## ARB

52.     Ms. Brown repeats and re-alleges each factual allegation contained above.

53.     A debt collector violates 15 U.S.C. § 1692f(6)(A) by taking or threatening to take non-judicial action to effect dispossession or disablement of property where there is no present right to possession of the property claimed as collateral through an enforceable security interest, where there is no present intention to take possession of the property, or where the property is exempt by law from such dispossession or disablement..

54.     Texas law provides that secured parties may take possession of collateral without judicial action so long as there is no "breach of the peace."  TEX. BUS. & COM. CODE § 9.609(b)(2).

55.     However, if collateral cannot be repossessed without a breach of the peace, a party must obtain a court order to take possession of the collateral.  *Id.*

56.     A repossession agent breaches the peace if it disables an access control device or trespasses to repossess collateral.  *See Duke v. Garcia*, No. 11-CV-784-BRB/RHS, 2014 WL 1318646, at *5 (D.N.M. Feb. 28, 2014) (while repossessing party may have limited privilege to enter property to repossess collateral once he has been asked to leave, he is a trespasser and continued repossession constitutes breach of the peace); *Brooks v. Leon's Quality Adjusters, Inc.*, No. 1:15-CV-000965-JLT, 2016 WL 4539967, at *13 (E.D. Cal. Aug. 30, 2016) (unlawful entry by breaking the lock on a garage door where a car was stored constituted a conversion and, therefore, there was a breach of the peace); *Pantoja-Cahue v. Ford Motor Credit Co.*, 375 Ill. App. 3d 49, 57, 872 N.E.2d 1039, 1046 (2007); *Davenport v. Chrysler Credit Corp.*, 818 S.W.2d 23, 30 (Tenn. Ct. App. 1991); *Laurel Coal Co. v. Walter E. Heller & Co.*, 539 F. Supp. 1006, 1008 (W.D. Pa. 1982) (entering property by cutting a chain used to lock a fence which enclosed the property was breach of the peace).

57.     ARB's personnel had twice been told to leave Hanover Post Oak property, but continued to try and break into the property and ultimately did so.

58.     ARB's return to Hanover Post Oak's property constitutes a trespass under Texas law.

59.     By breaking into Hanover Post Oak's parking garage and trespassing on Hanover Post Oak's property to repossess Ms. Brown's vehicle, ARB breached the peace.

60.     Ms. Brown had her vehicle in a locked garage, which rendered its removal impossible without a breach of the peace.

61.     As such, so long as the vehicle was in into Hanover Post Oak's locked garage, it was exempt by law from non-judicial dispossession.

62.     Therefore, ARB violated 15 U.S.C. § 1692f(6)(A) by taking non-judicial action to effect dispossession of Plaintiff's property where the property was exempt by law from such dispossession.

WHEREFORE, Ms. Brown prays for relief and judgment, as follows:

a)  Adjudging that ARB violated 15 U.S.C. § 1692f(6)(A);

b)  Awarding Ms. Brown statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

c)  Awarding Ms. Brown actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

d)  Awarding Ms. Brown reasonable attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1692k(a)(3);

e)  Awarding Ms. Brown pre-judgment and post-judgment interest as permissible by law; and

f)  Awarding such other and further relief as the Court may deem proper.

**COUNT II**
**VIOLATION OF TEX. BUS. & COM. CODE § 9.609(b)(2)**
**WESTERN FUNDING**

63.     Ms. Brown repeats and re-alleges each factual allegation contained above.

64.     Secured creditors have a nondelegable duty not to breach the peace when they repossess secured collateral. The courts may find them liable for the acts of independent contractors who breach the peace in the course of repossessing secured collateral. *MBank El Paso, N.A. v. Sanchez*, 836 S.W.2d 151, 154 (Tex. 1992); *see also Doucette v. Belmont Sav. Bank*, No. ESCV20161596D, 2017 WL 2427566, at *2 (Mass. Super. Apr. 14, 2017); *Binion v.*

*Fletcher Jones of Chicago, Ltd.*, 2014 IL App (1st) 131710-U, ¶ 19; *Williamson v. Fowler Toyota, Inc.*, 1998 OK 14, 956 P.2d 858; *DeMary v. Rieker*, 302 N.J. Super. 208, 695 A.2d 294 (App. Div. 1997); *Robinson v. Citicorp Nat. Servs., Inc.*, 921 S.W.2d 52, 55 (Mo. Ct. App. 1996); *Mauro v. Gen. Motors Acceptance Corp.*, 164 Misc. 2d 871, 876, 626 N.Y.S.2d 374, 377 (Sup. Ct. 1995); *Clark v. Assocs. Commercial Corp.*, 877 F. Supp. 1439, 1448 (D. Kan. 1994); *Hester v. Bandy*, 627 So. 2d 833, 843 (Miss. 1993); *Sammons v. Broward Bank*, 599 So. 2d 1018, 1019 (Fla. Dist. Ct. App. 1992); *McCall v. Owens*, 820 S.W.2d 748, 752 (Tenn. Ct. App. 1991); *Massengill v. Indiana Nat'l Bank,* 550 N.E.2d 97, 99 (Ind. Ct. App.1990); *Nichols v. Metro. Bank*, 435 N.W.2d 637, 640 (Minn. Ct. App. 1989); *Gen. Fin. Corp. v. Smith*, 505 So. 2d 1045, 1047 (Ala. 1987); *Henderson v. Security Nat'l Bank,* 72 Cal. App.3d 764, 140 Cal. Rptr. 388, 390–91 (1977).

65.     Western Funding's repossession agents, ARB, breached the peace by breaking into Hanover Post Oak's parking garage and trespassing on Hanover Post Oak's property to repossess Ms. Brown's vehicle.

66.     Western Funding violated TEX. BUS. & COM. CODE § 9.609(b)(2) when its repossession agents, ARB, breached the peace to repossess Ms. Brown's vehicle.

WHEREFORE, Ms. Brown prays for relief and judgment, as follows:

a)  Adjudging that Western Funding violated TEX. BUS. & COM. CODE § 9.609(b)(2);

b)  Awarding Ms. Brown statutory damages, pursuant to TEX. BUS. & COM. CODE § 9.625(c)(2);

c)  Awarding Ms. Brown actual damages, pursuant to TEX. BUS. & COM. CODE § 9.625(c)(1);

    d)  Awarding Ms. Brown pre-judgment and post-judgment interest as permissible by law; and

    e)  Awarding such other and further relief as the Court may deem proper.

**COUNT III**
**VIOLATION OF TEX. FIN. CODE § 392.301(a)(8)**
**WESTERN FUNDING**

67.    Ms. Brown repeats and re-alleges each factual allegation contained above.

68.    In debt collection, a debt collector may not threaten to take an action prohibited by law.  *See* TEX. FIN. CODE § 392.301(a)(8).

69.    Western Funding violated TEX. FIN. CODE § 392.301(a)(8) by taking—through its agent ARB—an action prohibited by law in connection with the collection of Ms. Brown's alleged debt.

WHEREFORE, Ms. Brown prays for relief and judgment, as follows:

    a)  Adjudging that Western Funding violated TEX. FIN. CODE § 392.301(a)(8);

    b)  Awarding Ms. Brown injunctive relief pursuant to the TDCA;

    c)  Awarding Ms. Brown actual damages pursuant to the TDCA;

    d)  Awarding Ms. Brown reasonable attorneys' fees and costs incurred in this action;

    e)  Awarding Ms. Brown any pre-judgment and post-judgment interest as permissible by the law; and

    f)  Awarding such other and further relief as the Court may deem just and proper.

**TRIAL BY JURY**

70.    Ms. Brown is entitled to and hereby demands a trial by jury.

Dated: July 20, 2018

                        Respectfully submitted,

                        /s/ Russell S. Thompson IV

Russell S. Thompson IV
Southern District Bar # 1572841
Thompson Consumer Law Group, PLLC
5235 E. Southern Ave. D106-618
Mesa, AZ 85206
Telephone:     602-388-8898
Facsimile:      866-317-2674
rthompson@ThompsonConsumerLaw.com

/s/ Joseph Panvini
Joseph Panvini
Southern District Bar # 1572837
Thompson Consumer Law Group, PLLC
5235 E. Southern Ave. D106-618
Mesa, AZ 85206
Telephone: 602-388-8875
Facsimile: 866-317-2674
jpanvini@ThompsonConsumerLaw.com

Attorneys for Plaintiff